**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**



FILED OCT 12 2018 CLERK, US DISTRICT COURT NORFOLK, VA

SUSAN NEAL MATOUSEK,

    **Plaintiff,**

v.                                                    ACTION NO. 2:18cv445

WAL-MART, *et al.*,

    **Defendants.**

## DISMISSAL ORDER

On August 15, 2018, Plaintiff Susan Neal Matousek ("Plaintiff"), appearing *pro se*, submitted an application to proceed *in forma pauperis* ("IFP Application"), along with a proposed Complaint. IFP Appl., ECF No. 1. On August 29, 2018, the Court granted Plaintiff's IFP Application, and directed the Clerk to file Plaintiff's Complaint.[1] Order Show Cause at 1, ECF No. 2. However, the Court also advised Plaintiff that her Complaint "suffer[ed] from defects that must be addressed before this action can proceed." *Id.*

In her Complaint, Plaintiff stated:

> I have never had an issue in Wal-Mart, but due to financial fraud at Woodforest [Bank], I was detained, had a mental health check, and banned for having a disability. I want to know how a person w/ a disability can't bank or ask a [question] without being arrested, detained, and observed by CCB?

Compl. at 3, ECF No. 3. Plaintiff further stated: "Wal-Mart banned me for no reason from all Wal-Mart stores. . . . I feel discriminated against due to my documented disability. The young Jasmine at Woodforest Bank called me [']CRA-CRA['] and violate[d] [the] ADA, FDIC,

---

[1] The Court notes that in the past four months, Plaintiff has filed nine IFP Applications and nine separate proposed Complaints in this Court: the instant case and Civil Action Nos. 2:18cv293, 2:18cv301, 2:18cv433, 2:18cv446, 2:18cv448, 2:18cv457, 2:18cv500, and 2:18cv501.

and I was detained, eval[uated], [and] let go."[2] *Id.* at 4. As relief, Plaintiff sought $1 billion in damages. *Id.*

In an Order to Show Cause dated August 29, 2018, the Court explained that it is required, pursuant to 28 U.S.C. § 1915(e)(2), to dismiss a case if it "determines that . . . the action fails to state a claim on which relief may be granted." Order Show Cause at 2 (citing 28 U.S.C. § 1915(e)(2)). The Court further explained:

> Based on the allegations of Plaintiff's Complaint, it is clear to the Court that Plaintiff intends to assert a claim for disability discrimination under Title III of the Americans with Disabilities Act ("ADA"). Although Plaintiff's Complaint contains a general reference to a "documented disability," and states that Plaintiff "feel[s]" that the ban imposed was discriminatory, Plaintiff's Complaint does not allege sufficient facts to state a claim for relief under Title III of the ADA. Further, Plaintiff only seeks relief in the form of monetary damages, *i.e.*, $1 billion; however, "[m]onetary damages are not available under Title III" of the ADA. *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 839 (D.S.C. Sept. 29, 2015); *see also Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 638 (4th Cir. 2016) (noting that Title III of the ADA provides "no right of action for monetary relief").

*Id.* at 2-3.

---

[2] Plaintiff attached a copy of the "Notification of Restriction from Property" that she received from Wal-Mart on August 14, 2018, which states:

> Wal-Mart Stores, Inc. can prohibit individuals from entering its property who interfere with its business, shoplift, destroy property, or otherwise behave in a manner that is unacceptable. Wal-Mart Stores, Inc. has determined that you have engaged in conduct sufficient to necessitate limiting your access to Wal-Mart Stores, Inc. property. This document constitutes formal notice and warning that you are no longer allowed on property owned by Wal-Mart Stores, Inc., or in any area subject to Wal-Mart Stores, Inc.'s control. This restriction on entry includes, but is not limited to, all retail locations or subsidiaries of Wal-Mart Stores, Inc. Should you elect to ignore this Notice and enter Wal-Mart Stores, Inc. property, Wal-Mart Stores, Inc. may contact law enforcement and request you be charged with criminal trespass.

Compl. at 8, ECF No. 3.

2

For these reasons, the Court advised Plaintiff that her Complaint, "in its current form, should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)." *Id.* at 3. However, the Court chose not to immediately dismiss Plaintiff's action. Instead, in deference to Plaintiff's *pro se* status, the Court stated:

> Plaintiff is **ORDERED** to **SHOW CAUSE** why this action should not be dismissed by filing an Amended Complaint within thirty days of the date of entry of this Order to Show Cause. The Amended Complaint must clearly state all causes of action that Plaintiff intends to assert, identify a valid basis for the Court's jurisdiction over such causes of action, clearly identify the Defendant(s) against whom each cause of action is asserted, and set forth all factual allegations against Defendant(s) upon which Plaintiff's causes of action are based.

*Id.*

Following the entry of the Court's August 29, 2018 Order to Show Cause, Plaintiff filed a number of submissions, a response to the Order to Show Cause ("Response"), what appears to be a jury demand, and a motion in which she asks to be removed from e-filing, and to have all Court documents sent to her via mail ("Motion").[3] Submissions, ECF Nos. 4, 7-8; Resp., ECF No. 6; Jury Demand, ECF No. 9; Mot., ECF No. 10. Plaintiff did not, however, file an Amended Complaint that complies with the specific instructions set forth in the Court's August 29, 2018 Order to Show Cause.

In her Response, Plaintiff states that she "WAS LOOKING TO OPEN A NEW ACCOUNT" at a bank within Walmart "BECAUSE [SHE] SHOPPED AT WALMART AND [SHE] THOUGHT IT SEEMED CONVENIENT." Resp. at 1 (capitalization in original). Plaintiff claims that a "bank attendant . . . called [her] crazy after [she] disclosed to her that [she]

---

[3] The Court notes that Plaintiff never requested to receive court documents in this action electronically and, as such, all communications with Plaintiff will be sent to Plaintiff via U.S. Mail to: P.O. Box 14481, Norfolk, Virginia 23518.

had a disability check and [she] asked her . . . questions about the bank and the CEO in Texas." *Id.* Plaintiff claims that the bank told her "lies" and was involved in "over-charging." *Id.* Plaintiff claims that she "tried to speak to the bank manager," but her request was "refused." *Id.* Plaintiff claims that she later went to another Walmart to conduct her banking, and "was treated ok." *Id.* at 2. After Plaintiff's "business was concluded and [she] left the store," Plaintiff claims that "African American Norfolk police officers started screaming at [her] and were barking out commands." *Id.* Plaintiff claims that she "was arrested, cuffed and dragged across the parking lot." *Id.* Plaintiff claims that the situation was later "diffused," and that she "had to go to Norfolk CCB and be evaluated [because] someone lied about [her.]" *Id.* Plaintiff claims that she "was evaluated" and "nothing came of it except [she is] now banned from all Wal-Marts and [W]oodforest banks." *Id.* Plaintiff claims that "[t]his Bank, Woodforest, is not credible nor reputable," and that she is "suing to ensure they cannot steal information [or] lie to people and charge extra things and then harass you when you question them." *Id.*

In her other submissions, Plaintiff claims, among other things, that (i) "Straight Talk double charged [her]" and "the refund department in Honduras refuses to refund [her];" (ii) she is "banned from Wal-Mart due to lies of Woodforest bank;" (iii) she wants to "sue Straight Talk for 5 million dollars;" (iv) she was told by a "paralegal for Keffer, Tidewater Mortgage, Creed Realty" that "she'd have a hearing" on her motions; (v) "Shelby of Townebank in Camden lied about [Plaintiff]" and a sheriff is aware of the lies; and (vi) Phil Matousek "tried to stab [Plaintiff] on Aug[ust] 17, 2018 & then tr[ied] to take out a false charge" that is "going to be quashed." Submission, ECF No. 4; Jury Demand, ECF No. 9.

As explained above, the Court's August 29, 2018 Order to Show Cause explained that "[b]ased on the allegations of Plaintiff's Complaint," it was clear that Plaintiff intended to assert a disability discrimination claim under Title III of the ADA. Order Show Cause at 2. However, the Court further explained that Plaintiff's Complaint (i) "does not allege sufficient facts to state a claim for relief under Title III of the ADA," and (ii) only seeks relief that is unavailable under Title III of the ADA. *Id.* at 2-3. Instead of dismissing the action pursuant to 28 U.S.C. § 1915(e)(2), the Court provided Plaintiff with an opportunity to file an Amended Complaint. *Id.* at 3. Plaintiff did not file an Amended Complaint that complied with the instructions of this Court's Order to Show Cause, and the Court finds that the documents Plaintiff did submit to the Court do not cure the defects of Plaintiff's Complaint, as noted in the Court's Order to Show Cause. Accordingly, Plaintiff's action is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2), and Plaintiff's Motion, ECF No. 10, is **DISMISSED as moot**.

Plaintiff may appeal this Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States District Court, Norfolk Division, 600 Granby Street, Norfolk, Virginia 23510. The written notice must be received by the Clerk within thirty days from the date of the entry of this Dismissal Order.

The Clerk is **DIRECTED** to send a copy of this Dismissal Order to Plaintiff.

IT IS SO **ORDERED**.

/s/ Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October /2, 2018

5